No. 32,845

H. L. McCRUM, *Appellant*, v. C. E. WHITAKER, Administrator of the Estate of C. M. James, Deceased, *Appellee*.

(61 P. 2d 909)

Opinion filed November 7, 1936.

*T. A. Moxcey, Steadman Ball* and *Phillip O. Schrack,* all of Atchison, for the appellant.

*Maurice P. O'Keefe,* of Atchison, and *Charles W. Reeder,* of Troy, for the appellee.

The opinion of the court was delivered by

DAWSON, J.: This was an action to adjudicate the disputed ownership of fourteen postal-savings certificates in the possession of plaintiff, H. L. McCrum, and which stood in the name of the late C. M. James, of Doniphan county, who died intestate on August 9, 1934.

Plaintiff alleged that on January 5, 1934, James had made an outright gift of the certificates to him and delivered them at the same time. He prayed that the defendant administrator be required to execute an assignment of the instruments. Defendant joined issue on plaintiff's allegation that the certificates had been given to plaintiff. By informal enlargement of the issues, defendant prayed that plaintiff be required to surrender the certificates to him as administrator of James' estate.

The cause was tried without a jury. The trial court made findings of fact, the controlling feature of which was that James had merely placed the certificates in plaintiff's possession for safekeeping, with no intention of making him a gift of them.

Judgment was entered for defendant with directions that the certificates, which had been brought into court, be delivered to defendant.

Plaintiff appeals, assigning error which chiefly centers about the admission of testimony to this effect: Witnesses for defendant testified over timely objection that they had heard James say that he had given the certificates to plaintiff for safekeeping, and that James made other statements which, if competent, tended to show that he continued to assert his own beneficial ownership of the certificates notwithstanding he had put plaintiff in possession of them.

Appellant contends that not only was this line of testimony incompetent but that its prejudicial effect is reflected in the trial court's fifth finding of fact, which, in part, reads:

"5. . . . the conversations of James with persons other than the plaintiff and his wife, both before and after the certificates were delivered to McCrum, indicated and clearly expressed an intention on his part to turn the certificates over to McCrum only for safekeeping, and are inconsistent with any intention on his part to give up title to the same."

But in connection with the quoted finding, however, it is proper to note the sixth finding of fact, which reads:

"6. The court further finds that, independently of any conversations by James at any time other than to Mr. and Mrs. McCrum with reference to the delivery of these certificates, that the evidence and circumstances of the case clearly show that James did not intend to give the certificates to McCrum, but only turned the same over to him for safekeeping."

This latter finding makes it clear that although the trial court deemed the challenged testimony to be competent, it would and did reach the same conclusion of fact from the other evidence that James did not make a gift of the certificates to plaintiff when he delivered them into his keeping. If such other evidence, considered independently as the trial court remarked, would support the general finding and judgment, we need give ourselves no present concern over the competency of the challenged testimony. That evidence, briefly, was to this effect: James was a bachelor, a veteran of the Spanish-American war. He lived in a small house in the unincorporated village of Doniphan. He drew a small pension. He was inclined to be stingy about money. He saved $1,800 and put it in a bank which failed. Eventually he recovered half that amount and invested it, $900, in these postal-savings certificates, which were dated December 23, 1933. He was accustomed to rent part of his

little house to third persons, and he had no place on his own premises to keep the certificates safely. Plaintiff was a long-time friend of James. Plaintiff's wife was James' half sister. It was on January 5, 1934, just thirteen days after James purchased the certificates in his own name, that he delivered them to plaintiff. At the time of this delivery and for several preceding years James was subject to recurring spells of sickness, and required the care of a nurse, and he usually was $30 to $40 in debt for such nursing services. He had practically no means except his little house, these certificates, and his small pension. He barely had enough to supply his pressing needs during sickness, and no surplus of cash; and he had no money to pay the expenses of his nursing and care in his last sickness nor the expenses of his burial—aside from the postal-savings certificates in plaintiff's possession. Another significant fact was that for thirty-five years plaintiff had been a mail carrier in the United States postal service and must have known that a mere manual delivery of savings certificates issued by the postal department in the name of C. M. James would not effectuate a beneficial transfer of title to himself, without a good deal of red tape at least, and he did not attempt to exercise any beneficial dominion over the certificates during the remainder of James's life, which was seven months after plaintiff had received them. These circumstances were sufficient to support the finding and judgment in favor of the defendant administrator.

Our attention is called to the evidence given by plaintiff's wife. She testified that on January 5, 1934, she and her husband had visited James, and as they were about to leave, James said,

". . . Harry, I want to give you these, and . . . I want them to be yours. . . . He handed him the certificates."

.    .    .    .    .    .    .    .    .    .    .    .    .

"Q. Yes. Did he say why, or anything? Is that all he said? A. That is all he said. . . . Mr. James never left anything with us before. He never gave us anything before, but he would bring up little treats to the little girl. He was always very saving of his money. I don't know whether he was stingy or not. Some people might think so. I think saving better than stingy."

In its findings of fact the trial court made special mention of the testimony of plaintiff's wife, quoted above, but without bluntly expressing its disbelief of it. However, the general finding manifestly shows that no credence was attached to her testimony. That was the court's prerogative, even if such testimony was competent, which is far from clear. Certainly if the questioned testimony of the wit-

ness Pollard was competent and which was to the effect that James said he had given them (the certificates) "to Harry and La (plaintiff's wife) . . . to keep for him," the wife's testimony would have been incompetent under the rule of the civil code which closes the mouth of a party to a transaction with a deceased person where the adverse party is the administrator. (R. S. 60-2804.)

Be that as it may, there is no prejudicial error in the record, and the judgment is affirmed.